JOHN JUNIOR HUGHES, PLAINTIFF AND RESPONDENT, v.
R. M. MELBY AND ELI M. MELBY, HIS WIFE, AND WIL-
LIAM MELBY, DEFENDANTS AND APPELLANTS.

No. 10197.
Submitted March 6, 1961. Decided May 31, 1961.
Rehearing denied July 18, 1961.
362 P.2d 1014.

Ralph J. Anderson and Stanley P. Sorenson, Helena. Ralph
J. Anderson argued orally, for appellants.

DeKalb, Dockery, Mondale and Johnson, Lewistown, Wey-

mouth D. Symmes, Billings for respondent. Leonard H. De-Kalb argued orally.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from a judgment entered in the district court of the tenth judicial district, which judgment was for an amount of $4,500 per year as reasonable rental value for the years 1954 through 1959, together with interest on each year's rental at the rate of six percent per annum, from the end of that year until paid, less an amount for taxes paid on real property. The judgment was entered upon a jury verdict fixing the reasonable rental value of a ranch property, that being the only issue submitted to the jury, pursuant to stipulation of the parties.

The case was before this court before in Hughes v. Melby, 135 Mont. 415, 340 P.2d 511, wherein the cause was sent back to the district court for a determination of plaintiff's damages. Upon the case being returned to the district court, the parties entered into a stipulation that the issue might be tried without further pleadings. It was stipulated as follows:

"Now, Therefore, in consideration of the premises it is mutually agreed that any party to this action may offer evidence relating to the damages which may have been suffered or alleged to have been suffered up to the date of this action with reference to such damages and may offer any evidence relevant to the subject of damages without the filing of any further or supplemental pleadings."

As appears from the original case, the contract was one for the sale of a ranch by the appellants to the respondent. It provided:

"For the sum of $105,000 including 5 stacks of hay on Pike Creek. Conditions and terms of the sale are as follows:

"29% Cash — Bal. 10 annual p'm'ts. 5% int. by Nov. 15th, possession of land April 1 — 1954 — seller reserve ½ land-

owner's Royalty. Transfer all water rights & grazing rights in District. Seller pay 1953 taxes. * * *

"Said sale may be made for a less amount if hereafter authorized by me; you are further authorized to receive a deposit on the sale price. I agree to pay a commission of $5,000 — on the sale price and the commission shall be payable as soon as the sale is made and a down payment has been made, or sale price paid in full at the time of sale, and, or as soon as a binder fee has been collected on the sale, which ever be first."

In this case, as a part of the stipulation made and adopted by the trial court, it was stipulated that, in addition to $10,000 paid as a binder payment at the time of the acceptance of the contract, by respondent, the plaintiff would deposit in escrow $35,000 and receive possession by April 1, 1960. This was done.

The decree provided for $4,500 per year for the years from 1954 through 1959, inclusive, as the reasonable rental value, less the amounts paid as taxes as disclosed by the record. The taxes were in total amount for six years of $1,892.70.

The sale was on an installment plan. It is the contention of appellants that the rental value should have been reduced each year by the amount of interest which the plaintiff would have been compelled to pay if the contract had gone forward as planned. Also, the appellants contend that payments should have been reduced by the amount of Taylor Grazing Fees paid by them in each year from 1954 through 1959 as follows:

| | |
|------|----------|
| 1954 | $327.45 |
| 1955 | 347.77 |
| 1956 | 372.71 |
| 1957 | 402.62 |
| 1958 | 396.88 |
| 1959 | 400.96. |

Thus, the judgment provided $4,500 per year less each year's taxes, plus six percent interest at the end of each year. The judgment did not provide a set-off or deduction for Taylor Grazing fees paid nor interest on the unpaid balance.

To further enlighten the picture, this court in the original case found the contract of sale enforceable as of the year 1953, but the sellers, appellants here, remained in possession and operated the ranch until April 1960. It was their cattle which grazed the Taylor Grazing lands for which the above fees were paid.

The single specification of error goes to the amounts entered in the judgment.

The appellants do not in their briefs question the reasonable annual rental value of $4,500 per year. This amount the jury found from testimony of witnesses whose values ranged from $2,000 per year to $9,000 per year. Also unquestioned by respondent is the deduction of taxes paid on real estate. Thus there are but two items with which we shall be concerned, one is the amount of interest and the other Taylor Grazing fees.

Taking up the Taylor Grazing fees first, we find no request for findings on this matter to the trial court. The stipulation approved by the trial court provided:

"6. It Is Further Stipulated And Agreed that under the rules and regulations of the grazing district, the *owner of the cattle* thereon pays the rentals charged by the district for each animal unit." Emphasis supplied.

As stated before, it was appellants' cattle which grazed the range and reaped the benefits. The evidence on the Taylor Grazing fee matter came in, in an oblique manner as follows:

In proving the reasonable rental value, one of the important elements was the carrying capacity in animal units of livestock which could be pastured on the fee lands agreed to be conveyed. The data on carrying capacity was established from records of the grazing district of the number of animal units shown by the district records. This afforded a basis for that feature of the reasonable rental value and was used as a basis for opinions by witnesses as to the reasonable rental value. The evidence was not introduced for any other purpose except to aid the jury and court in fixing damages. As the record reveals, this

exchange on cross-examination of Mrs. Eva Crosser, Secretary-Treasurer of the Winnett State Grazing District, occurred:

"Q. Can you tell us from your records the amount of rental paid by the Melbys during each of the years?" This was objected to as irrelevant. Counsel for appellants then explained in the following language the thought of appellants' on the question:

"I believe that directly speaking the rental value as rent paid for these units is perhaps outside the scope of the issues, but we believe we are entitled to deduction on those amounts because they were paid by Melby. * * * I am perfectly willing, in order to save time, to make this witness my own."

It was then resolved that the witness could later prepare a list of grazing fees and, submit "it to the court for other purposes." No follow-up was made, and it seems obvious from the record that the district court was not apprised of the matter in that no request for a finding was asked, no further evidence adduced, and the stipulation as to the *owner of cattle* being required to pay the fees had been approved by the court. Under those circumstances we hold that the court did not err in not allowing the Taylor Grazing fees as a deduction.

As to the other question of interest, the appellants pose the problem that where the purchaser purchases land upon an installment basis, the court will try to place the parties in the same position they would have been in had the contract gone through as planned. The court will allow a reasonable rental value less interest on the unpaid installments and less money expended on permanent improvements. For this general proposition see cases cited in the annotation in 7 A.L.R.2d 1204 and 75 A.L.R. 315.

In the annotation in 7 A.L.R.2d at 1206, a general statement is made as follows:

"The compensation awarded as incident to a decree for specific performance is not for breach of contract and is there-

fore not legal damages. The complainant affirms the contract as being still in force and asks that it be performed. He cannot have it both ways, performed and broken. The situation is simply that, if the court orders it to be performed, *the decree must as nearly as possible order it to be performed according to its terms,* and one of those terms is the date fixed by it for its completion. This date having passed, the court, in order to relate the performance back to it, equalizes any losses occasioned by the delay by offsetting them with money payments. Often the result is more like an accounting between the parties than like an assessment of damages.'' Emphasis supplied.

This general rule has been recognized in this court's decision in Wright v. Brooks, 47 Mont. 99, 112, 130 P. 968, 971. In that case the court held that a deduction of taxes paid by sellers, who were to blame for the long continuance of legal title in their names, was not proper but without any further ado the court commented: ''However, the court [district court] did require the respondent to pay interest at the legal rate on the purchase price for the entire period since the date of the agreement. This was sufficient.''

In Finlen v. Heinze, 32 Mont. 354, 389, 390, 393, 80 P. 918, 928, this court speaking through Mr. Justice Holloway said:

''As to when Heinze actually took up the leases and bonds is quite immaterial, except upon a theory suggested by counsel for appellant — that, if the decree herein is to be enforced, each of the payments of $27,000 should bear interest from one and two years after such date. And on the cross-examination of defendant Heinze he was asked to give that date, but upon objection the testimony was excluded and an exception taken, but no error is assigned in appellant's brief to this ruling of the court; neither is there any specific objection to the form of the decree in this respect. However, aside from these considerations, we are of the opinion that the court did not err in excluding the evidence. Section 4280 of the Civil Code [of 1895, now R.C.M. 1947, § 17-204], reads as follows: 'Every

person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor from paying the debt.'

"As applied to this case, then, that section means that Finlen is entitled to interest on each of those payments except during such time as he himself prevented Heinze from making them. If Heinze had deposited the amounts in court at the time of filing his counterclaim, no one would insist that he must now pay interest on them; and under the authority of Christiansen v. Aldrich [30 Mont. 446, 76 P. 1007], supra, he was not required to make such deposit or tender, for the reason that, as Finlen denied the existence of the contract, such deposit or tender would have been useless. Not only did Finlen deny that any contract whatever was made, but he took the initiative, and commenced this action to recover possession of the property in controversy. So far as this record shows, the only thing which interposed and prevented Heinze from making these payments when they became due was Finlen's own acts, and these bring the case within section 4280 above. This interference on Finlen's part arose before either payment became due, and continued until the trial, so that now, *having prevented such payments being made on time, he cannot ask interest by way of damages or compensation for the delay which he himself occasioned.*" Emphasis added.

In a dissenting opinion in that two to one decision, Mr. Chief Justice Brantly said:

"Furthermore I think the decree should, in any event, be so amended as to require the defendant to pay interest upon the installments of the purchase price from the time at which they respectively fell due, and that for the purpose of fixing these dates the cause should be remanded for further proof. The defendant [purchaser] has asked that the contract be

specifically enforced as made. Conceding that it was made as alleged and found, the decree should adjust the matter of interest. I do not think the section of the statute cited in the majority opinion has any application.

"These views may seem somewhat technical, but an action for specific performance of a parol contract proceeds and must be sustained, if at all, upon grounds which are more or less technical."

In the Wright v. Brooks case, supra, 47 Mont. 99, 111, 130 P. 968, 970, Chief Justice Brantly and Justice Holloway concurred in an opinion which said this concerning interest on a contract which was decreed to be specifically performed:

"The evidence established that throughout the entire period of respondent's occupancy the taxes and public charges upon the lots were paid by Henry P. Brooks or John Brooks, and error is assigned because the trial court did not so find. We see no error here. This court has held that in an action to quiet title, with taxes paid by the defendant in good faith, it is the duty of the trial court to require reimbursement as a condition to the relief (Larson v. Peppard, 38 Mont. 128, 133, 99 Pac. 136, 129 Am.St.Rep. 630, 16 Ann.Cas. 800), and we think counsel confuse that situation with the totally different one now presented. Whether the payment of the taxes by Brooks is considered to be of importance on account of the failure of the trial court to impose reimbursement as a condition to the relief granted, or as affecting the respondent's right to any relief, we are not clearly informed. But in either view it is decisive that the court found, not the respondent, but Henry P. Brooks and John Brooks, to have been at fault, and fixed upon them the blame for the long continuance of the legal title in their names. While public charges against real estate are properly assessed to the holder of the legal title, and it is his privilege to pay them in order to protect it, yet in this case he could at any time have shifted that burden to the shoulders of the respondent by simply keeping the agreement.

Such public charges as are to be expected in the usual course of events are like increases in value or depreciation in the currency after contract of sale and pending conveyance, in that they will not absolve the vendor, nor entitle him to any added recompense, where he is at fault for delay in performance. [Citing cases.] *However, the court did require the respondent to pay interest at the legal rate on the purchase price for the entire period since the date of the agreement. This was sufficient.*" Emphasis supplied.

We think the better holding to be that in Wright v. Brooks, supra, and that Finlen v. Heinze, supra, so far as it holds on interest is overruled.

The contract in the instant case provided a down payment and then ten annual payments at five percent interest, possession April 1, 1954. In the face of this contractual provision by the parties, the district court provided in its decree "interest on each year's rental at the rate of six percent per annum, from the end of that year until paid" to the vendee, respondent here; at the same time did not allow as a deduction from the reasonable rental value charged to the vendors any interest as per the contract of sale.

Also, here the vendee did not tender the various amounts due, except as to the $10,000 "binder" payment. He did testify at the first trial that he had arranged with a bank to secure funds to discharge the *down payment.*

Here the situation is such that if the contract had been carried out as contemplated and possession surrendered on April 1, 1954, the vendee, respondent, would have received the rents. He would have had to pay interest as provided by the contract, five percent on each November 15th on the unpaid balance.

The jury set the reasonable rental at $4,500 per year, the court awarded that amount with the legal rate of interest at six percent payable at year's end until paid.

To put the parties back to the enforceable contract, the ap-

pellants contend that the court should then have allowed a deduction of the contract rate of interest, five percent, on the unpaid balance of the installments as of each November 15th as provided in the contract, unless the amount would exceed the reasonable rental value in each year. (The appellants concede that they could not claim more than the reasonable rental value as interest.)

To further analyze the problem, we observe that if the contract of purchase had been for a cash payment, without installments, no question would be present because our statutes provide when interest is excused. R.C.M. 1947, §§ 58-427, 58-429, 58-430. It is these statutes that respondent relies on. Respondent argues that our statutes govern the instant situation. However, legal damages, insofar as the action on specific performance is concerned, are not in issue. The contract is being enforced. It cannot in one breath be enforced as to one phase but not as to others.

In the California case of Greenstone v. Claretian Theological Seminary, 173 Cal.App.2d 21, 30, 31, 32, 37, 343 P.2d 161, 166, the court, under identical statutes, approved interest as a deduction from the rental value, saying:

"However, in consideration of the explicit terms of the agreement of August 30, 1955, the manner in which they were ordered enforced in the final judgment, and the obvious intent of the trial court, we cannot denominate the credit allowed plaintiff in the instant case compensation for loss based upon rents and profits suffered by reason of the seminary's delay in transferring title or as an outright award thereof, separate and apart from the express provisions and enforcement of the agreement, defined in the cases hereinbefore discussed to which the above rules of pleading apply. The amount constitutes neither 'damages,' 'judgment for loss of rentals,' nor an 'award for compensation for loss due to delay in conveying title,' but a credit due the vendee under the specific terms of the agreement resulting from the trial court's order that the terms of

the agreement be carried out, and its determination of the cash purchase price due upon an adjustment of the rights of the parties thereunder. The trial court in its final judgment simply decreed that the agreement be enforced according to its terms, and the accounting provided the facility or method by which the purchase price could be determined at that time after a lapse of several years. It constitutes part of the final all-over settlement of the terms of the contract, one of which provides that '(I)nterest, taxes, rents and fire insurance are to be prorated to date, deed is recorded.' An accounting was rendered and the trial court ordered the parties to execute escrow instructions 'to carry said contract into effect, in accordance with its terms.' No judgment for net rental value was awarded, but on the contrary it was decreed 'that plaintiff is entitled to a credit against the purchase price of the real property described in said agreement for net rents received from said real property by the defendant seminary from September 20, 1955, to September 15, 1958, in the sum of $34,011.20. Interest, taxes, rents, fire insurance and payments, if any, the defendant seminary made on the principal of the Winter Mortgage Company note and expenses of operating the apartment house to be prorated from September 15, 1958, *to the date the deed from the seminary to plaintiff is recorded.*' (Emphasis added); that the seminary is entitled to receive the sum of $13,586.95 for interest on the unpaid purchase price; and decreed the unpaid cash purchase price payable by plaintiff under the contract as of September 15, 1958, to be $44,575.75. Authority for the ascertainment and settlement of such amounts arising out of the express terms of the agreement, as an aid to the parties in the faithful performance thereof and to the court in determining the purchase price due thereunder in a judgment for specific enforcement, is found in the policy of a court of equity, once having acquired jurisdiction of an action for specific performance, to adjust the rights of all under the contract and leave nothing open for further litigation. Therefore, where

plaintiff seeks specific performance, affirming the contract, the defendant reaffirms and agrees to perform the same, a court of equity can not only order the parties to perform every term of the contract they affirm, but if necessary ascertain therefrom by accounting or otherwise the total purchase price to be paid thereunder upon conveyance of title." And again the California court observed:

"The fact that the vendor may or may not be in default under the contract seems of little importance in view of its specific terms, and since the interest allowance does not exceed plaintiff's credit on net rentals. We also hold that the entire $65,000 not having been available for the seminary's use, even though $5,000 thereof was held by the bank, that the interest should be computed on the entire cash price."

In the instant case we hold that where no tender was in fact made, even though the tender was excused as a legal matter, to place the parties back under the contract which is being enforced is to enforce it according to its terms. Under those terms, the purchaser was in effect borrowing the deferred payments at five percent interest, and would have been obligated to pay the interest. The purchaser now has the reasonable rental value, but must stand a reduction of the amount of interest due under the contract on all payments over the down payment of twenty-nine percent for the time they were due. It was only as to the down payment on which the purchaser would not have owed interest, had the contract gone forward as planned.

We have not discussed nor distinguished the many cases cited by counsel for both appellants and the respondent, but observe that many of them are not applicable to the issue here presented.

As we observed in Steen v. Rustad, 132 Mont. 96, 107, 313 P.2d 1014, 1020: "Therefore, in arriving at a just result, we will not be guided by any one case, but rather will interpret the facts of this case in the light of the many cases which have already been decided."

We interpret the contract, in view of its provisions for a binder payment, furnishing of abstract of title, and possession April 1, 1954, to mean that the first annual installment was due on November 15, 1955, with interest under its provisions to begin at the date of possession, that is April 1, 1954. Under these circumstances, with a down payment of $30,450, there became due from the purchaser on November 15, 1955, the first annual payment of $7,455 plus interest at five percent on the unpaid balance from April 1, 1954. The first period's interest thus amounts to $310.62 per month or $6,057.09 (nineteen and one-half months.) The second period, as of November 15, 1956, would be twelve months' interest, or $3,354.75, as of November 15, 1957, $2,982.00, as of November 15, 1958, $2,609.25, as of November 15, 1959, $2,236.50, so that, on April 1, 1960, there was owing on the contract a total of $94,283.34.

On the other side of the ledger, the sellers owe the annual rental for each year ending April 1, less the taxes paid for that year. These amounts are April 1, 1955 — $4,259.25; April 1, 1956 — $4,162.95; April 1, 1957 — $4,168.55; April 1, 1958 — $4,172.05; April 1, 1959 — $4,171.25, and on the date of actual possession April 1, 1960, $4,172.75. To this, the purchaser is also entitled to credit for accrued interest at the legal rate of six percent for each year's rental to the date of possession. As to this allowance of interest on the unpaid annual rentals, rather than allow each year's rental as an offset in that year, we are following out the equitable principle used on the contract.

Thus on April 1, 1960, the purchaser was obligated to the sellers in the total sum, including down payment, six annual payments and accrued interest of $94,283.34. Against this amount, the purchaser is entitled to a credit, including the annual rental less taxes plus interest at six percent for each year's rental as it became due, in the total amount of $28,-885.44. In order to have the decree enforced, it will be necessary for the purchaser to pay the sum of $65,497.90 exclusive of the

annual payment due on November 15, 1960. According to the record there has been a total of $45,000 paid or placed in escrow by stipulation. Thus, it will be necessary for the purchaser to pay $20,397.90 to become current under the contract as of April 1, 1960.

With the modification of the judgment as provided above, and with a current accounting between the parties for the time since April 1, 1960, let a decree of specific performance be issued by the district court. Each party to pay his own costs.

MR. CHIEF JUSTICE HARRISON and MR. JUSTICES ADAIR and JOHN C. HARRISON concur.