RALPH J. SCHULTZ AND NORMAN E. WOOD, PLAINTIFF
AND RESPONDENT, v. GEORGE H. CAMPBELL AND ALICIA
G. CAMPBELL, HUSBAND AND WIFE, DEFENDANTS AND AP-
PELLANTS.

No. 10858.
Submitted September 14, 1965. Decided May 3, 1966.
413 P.2d 879.

Poore, Poore & McKenzie, Robert A. Poore (argued), Butte, Barney Reagan (argued), Cut Bank, for appellants.

Church, Harris, Johnson & Williams, Dzivi, Sorte & Conklin, James, Crotty & Corontzos, Charles C. Lovell (argued), George R. Crotty, Jr. (argued), Gerald Richard Dzivi (argued), Great Falls, for respondents.

HONORABLE L. C. GULBRANDSON, District Judge, sitting in place of MR. JUSTICE DOYLE, delivered the Opinion of the Court.

This is an appeal from a decree of the district court of the eighth judicial district, Cascade County, ordering specific performance of a contract for the sale of land in favor of the plaintiff-purchaser.

Appellant George H. Campbell, for more than fifty years a

managing agent of farm lands for eastern principal, acted as agent for the owner, Homer H. Jones, in managing the lands involved in this dispute prior to and during the year 1941. Campbell, as Jones' agent, negotiated the sale of these lands to respondent, Ralph J. Schultz, and dictated and prepared a contract for deed, dated December 10, 1941, which was executed by Campbell, as Jones' agent, and by respondent Schultz. The contract was reportedly ratified by Jones and was recognized as binding and valid by all parties. The purchase price was $35,000.00, although later while both the contract and principal agent relationship were in effect, Campbell individually bought the land from his principal Jones for approximately $12,000.00.

The contract for deed recognized that the lands were unbroken sod and required Schultz to break and sow yearly increasing acreage. Payment was to be in crop shares, and the seller's shares were to be applied first to taxes, then against interest and, finally, against the contract purchase price of $35,000.00. The contract provided that in ten years, by December 1, 1951, Schultz was to have paid in full for the land.

Schultz took possession but was inducted into the Air Force in January, 1942, and his brother, Wilfred, with Campbell's knowledge and consent, farmed the lands on respondent Schultz's behalf from April 1942 until September 1945 when Wilfred was accidentally killed. Schultz returned from military service in November, 1945, and resumed farming the land with Campbell's knowledge and consent. Schultz personally farmed the lands from 1946 through the harvest of 1950, and Campbell inspected the operation occasionally during these years and regularly accepted crops from Schultz in accordance with the contract. During the period of 1941 to 1950, more than 1,800 acres of sod were broken, cultivated and converted to farm land.

Campbell acquired a deed to the land from his principal Jones without notice to Schultz, and later Campbell complained about Schultz's performance, alleging poor farming practices and lack

of farm records, and on July 6, 1950, Campbell wrote Schultz a letter demanding payment in full of the contract balance on or before December 10, 1951. Schultz apparently did not have sufficient cash or credit to pay the contract balance and on January 23, 1951, prior to written notice of default by Campbell, Schultz entered into a contract with respondent Norman E. Wood to sell the land in question for the sum of $50,000.00 cash.

There was no assignment of the Campbell-Schultz contract to Wood, and Campbell and Wood had no contractual relationship.

Wood took possession under the Schultz-Wood contract and has farmed the land and remained in possession since that time. Schultz and Wood contemplated that Schultz would secure a deed from Campbell in accordance with the original contract for deed and would in turn give a deed to Wood.

At this time Schultz believed he owed $27,000.00 on his contract for deed, but Campbell claimed the contract balance was more than $38,000.00, and Schultz accepted Campbell's figures on the contract balance. Schultz retained attorney O. B. Kotz to secure an appropriate deed from Campbell, and Mr. Kotz advised Campbell that funds were available to complete the contract. Campbell, after receiving notice that Schultz desired to complete the transaction, prepared and executed a quitclaim deed, which deed did not comply with the contract, and later it was declared to be unacceptable by attorney Kotz. Campbell also demanded execution of releases to Homer H. Jones, and to the Estate of Ebenezer B. Rany, which demands were not in accordance with the contract between Jones and Schultz.

Campbell took the position that he was not obliged to deliver a deed under the contract inasmuch as he felt that Schultz had forfeited his rights by failure to keep adequate crop records, and by engaging in what Campbell felt were poor farming practices. Campbell therefore claimed he had no obligation to perform under the contract and that he was only willing to

compromise the matter with Schultz by delivering a deed which reserved various rights of way to Campbell. Attorney Kotz repeatedly urged Campbell to forward a "conforming deed" and sent him such a deed form, but Campbell refused.

On June 1, 1951, Campbell retained counsel and served Schultz with a written notice of default.

On the Schultz-Wood contract, Wood had paid $4,000.00 down to a real estate agent, and was to pay the balance of $46,000.00 by March 15, 1951. Wood at that time arranged with his father to deposit two checks totaling $46,000.00 and a tender of the two checks was made to the bank designated by Campbell. The checks were never deposited for collection by the bank because Schultz refused to accept the deed submitted by Campbell. The two checks were subsequently withdrawn about June 1, 1951, and Wood then delivered his own personal check to the bank under a credit arrangement with the Montana Bank of Great Falls to cover such check if it was accepted by Campbell's agent. Later the note which Wood signed to permit such potential advance of credit was destroyed pending litigation and about 1953, the check itself was withdrawn. Schultz in the meantime had delivered possession to Wood in March 1951, and on June 26, 1951, Schultz commenced this action for specific performance. On November 7, 1953, the court ordered Wood joined as a party plaintiff, and in April 1964 the case came on for trial.

Campbell during trial admitted his desire to retain the land and admitted he had contacted Schultz and Wood separately in an effort to induce them to abandon the contract between themselves.

Upon the conclusion of the trial, Judge R. J. Nelson, made findings of fact and conclusions of law and ordered a decree be entered thereon wherein George C. Campbell, et ux, was ordered to convey said lands to Schultz. Schultz was ordered to pay Campbell $38,064.94 and Wood was ordered to pay $3,-615.68 to Campbell as reimbursement for taxes voluntarily paid.

Respondent Wood was decreed all of the crops and Campbell was decreed not to be entitled to any interest upon the contract price after the tender of the checks March 20, 1951, by Wood to the Great Falls First National Bank because of such tender and because the court found the defendants willfully delayed the litigation and were unwilling to do equity, and lacked clean hands. The appellant set forth the following specifications of error:

1. That the court erred in granting the remedy of specific performance under the facts of this case where no mutuality of remedy existed between Campbell as seller and Schultz and/or Wood as purchasers.

2. The court erred in holding that a tender of performance by buyer, which was a condition precedent to his obtaining specific performance also prohibited and excluded an award of interest per contract terms to seller as an offset against the crops decreed to the buyer during the relation back-to-performance period and occasioned by the litigation.

3. The court erred in assessing damages, that is, forfeiture against seller and unjustly enriching the buyer in like proportion because the court felt that seller had wrongfully refused to convey and had endeavored to delay trial.

The trial court held by reason of Campbell's purchase of the contract of vendor Jones, which purchase is evidenced by deed dated August 9, 1947, and recorded February 3, 1951, that Campbell, as to Schultz and Wood, held bare legal title to the premises. The trial court's holding is in accord with State v. Kistner, 132 Mont. 437, 440, 318 P.2d 223, 224, where this court stated:

"The interest of a vendor in a contract to sell real estate is intangible property. He holds the title of the real estate as security for the purchaser's obligation to pay the purchase price. Kern v. Robertson, 92 Mont. 283, 12 P.2d 565; Calvin v. Custer County, 111 Mont. 162, 107 P.2d 134; Epletveit v. Solberg, 119 Mont. 45, 169 P.2d 722. The same rule prevails in California.

See Retsloff v. Smith, 79 Cal.App. 443, 249 P. 886; Sherman v. Quinn, 31 Cal.2d 661, 192 P.2d 17; In re Estate of Reid, 26 Cal.App.2d 362, 79 P.2d 451.

"The interest of the vendor is treated as personalty. Calvin v. Custer County, supra."

█ The trial court further held that respondent Schultz was not guilty of any material default under the contract, although there had not been a strict compliance with the contract in the keeping of crop records, or in delivering proportionate shares of government payments to appellant Campbell. The trial court properly held that Campbell had waived any defaults that may have existed by regularly receiving payments annually through the crop year 1950. The holding that the contract was not terminated by Campbell's oral statements made prior to written notice is in accord with the statement of Justice Brantly in the case of Suburban Homes Co. v. North, 50 Mont. 108, 145 P. 2, as quoted with approval in Thompson v. Lincoln National Life Insurance Company, 110 Mont. 521, 105 P.2d 683:

" 'Although by its express terms time is made of the essence of a contract, and an option is reserved by the vendor to declare it terminated for failure to pay the purchase price at the date it falls due, or, if it is payable in installments, at the date that any one of the installments falls due, this provision may be waived by a failure to exercise the option, or by accepting a payment after it is due. The vendor cannot thereafter allege such default as a ground for declaring the contract terminated. Pomeroy on Contracts, § 357; 2 Warvelle on Vendors, § 820; Grigg v. Landis, 21 N.J.Eq. 494, 506; Boone v. Templeman, 158 Cal. 290, 110 P. 947, 139 Am.St.Rep. 126.' "

█ Since the terms of the contract required written notice of termination and an opportunity to cure alleged defaults, Campbell obviously could not effect a cancellation except by strictly complying with the contract. Rader v. Taylor, 134

Mont. 419, 333 P.2d 480; Shuey v. Hamilton, 142 Mont. 83, 381 P.2d 482.

Regarding specification of error number one we find that the claim of lack of mutuality is not tenable. We approve and adopt the following statement from Ellis v. Mihelis, 60 Cal.2d 206, 32 Cal.Rptr. 15, 384 P.2d 7 at p. 12:

"The old doctrine that mutuality of remedy must exist from the time a contract was entered into has been so qualified as to be of little, if any, value, and many authorities have recognized that the only important consideration is whether a court of equity which is asked to specifically enforce a contract against the defendant is able to assure that he will receive the agreed performance from the plaintiff. (See, e.g., 5 Corbin on Contracts (1951) §§ 1180, 1181, 1183, 1185, 1190, 1192; Rest., Contracts, com. a on § 372(1); Stone, The 'Mutuality' rule in New York (1916) 16 Col.L.Rev. 443, 444-445, 464.) As was said by Justice Cardozo, 'If there ever was a rule that mutuality of remedy existing, not merely at the time of the decree, but at the time of the formation of the contract, is a condition of equitable relief, it has been so qualified by exceptions that, viewed as a precept of general validity, it has ceased to be a rule today. [Citations.] What equity exacts today as a condition of relief is the assurance that the decree, if rendered, will operate without injustice or oppression either to plaintiff or to defendant. [Citations.] Mutuality of remedy is important insofar only as its presence is essential to the attainment of that end.' (Epstein v. Gluckin et al., 233 N.Y. 490, 491, 135 N.E. 861, 862.)"

Regarding specification of error number two on the effect of tender we find that the trial judge relied on the following statement from Hughes v. Melby, 139 Mont. 308, 362 P.2d 1014:

"To further analyze the problem, we observe that if the contract of purchase had been for a cash payment, without installments, no question would be present because our statutes provide when interest is excused. R.C.M.1947, §§ 58-427, 58-429, 58-430."

 The trial judge found there had been a tender of the amount due under the Campbell-Schultz contract and interpreted the foregoing statement and the statutes cited therein as stopping the running of interest after tender in a specific performance case. We approve the trial judge's interpretation of Hughes v. Melby, supra, but, for future specific performance cases, this court reserves the right to allow interest as an off-set against profits or crops. This statement is in accord with the case of Ellis v. Mihelis, supra, a case strongly relied on by appellants. This reservation obviously is of little satisfaction to appellants but is in line with previous practices of this court. See Hayward v. Richardson Construction Co., 136 Mont. 241, 251, 347 P.2d 475, 77 A.L.R.2d 1144, and cases cited therein.

 Appellants further argue that the trial judge erred in ruling that there had been a tender on behalf of respondent Schultz. The trial judge did erroneously find "payment to defendant's agent" but his ruling obviously was based upon a finding of tender which is amply supported by evidence in this case.

R.C.M.1947, § 58-427, provides:

*"Effect of offer on interest and accessories of obligation.* An offer of payment or other performance, duly made, though the title to the thing offered be not transferred to the creditor, stops the running of interest on the obligation, and has the same effect upon all incidents as a performance thereof."

R.C.M.1947, § 93-2201-1, provides:

*"An offer equivalent to tender.* An offer in writing to pay a particular sum of money, or to deliver a written instrument or specific personal property, is, if not accepted, equivalent to the actual production and tender of the money, instrument, or property."

R.C.M.1947, § 58-410, provides:

*"By whom to be made.* An offer of performance must be made

by the debtor, or by some person on his behalf and with his assent."

R.C.M.1947, § 58-418, provides:

"*Ability and willingness essential.* An offer of performance is of no effect if the person making it is not able and willing to perform according to the offer."

R.C.M.1947, § 93-2201-3, provides:

"*Objections to tender must be specified.* The person to whom a tender is made must, at the time, specify any objection he may have to the money, instrument, or property, or he must be deemed to have waived it; and if the objections be to the amount of money, the terms of the instrument, or the amount or kind of property, he must specify the amount, terms, or kind which he requires, or be precluded from objecting afterward."

The record is clear as to the offer of performance, willingness of respondents to make the offer, the availability of funds, tender of payment by agent Kotz and lack of any objection on the part of Campbell to the tender.

Ordinarily, a check is not a tender, but it may be as effective as a tender of currency if there is no timely objection to the form of tender, or if the objection is waived. See Larson v. Sjogren, 67 Wyo. 447, 226 P.2d 177; Milner v. Dudrey, 77 Nev. 256, 362 P.2d 439; Ulibarri v. Christenson, 2 Utah 2d 367, 275 P.2d 170; Gardner v. Spurlock, 184 Kan. 765, 339 P.2d 65; Parkinson v. Roberts, 78 Wyo. 478, 329 P.2d 823.

Numerous Montana cases recognize the rule that one waives the right to object to the form or medium of tender if the objection is not made at the time of tender. Fiers v. Jacobson, 123 Mont. 242, 211 P.2d 968 (1949); Thompson v. Lincoln National Life Insurance Company, 110 Mont. 521, 105 P.2d 683 (1940); Blackford v. Judith Basin County, 109 Mont. 578, 98 P.2d 872, 126 A.L.R. 639 (1940).

Regarding specification of error number three, we need not comment at length in view of this court's holding that the trial judge was not in error in ruling that tender stopped

the running of interest. We note, however, that the trial court did order the respondent Wood to reimburse Campbell the sum of $3,615.68 for taxes voluntarily paid by Campbell during the pendency of the action. The trial judge, even though he found it repugnant to do so, ordered reimbursement on the basis that failure to do so would result in unjust enrichment to respondent Wood.

Each contention advanced by appellant has been examined and we find no merit therein as applied to this case, and, therefore, the judgment of the district court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES JOHN C. HARRISON, ADAIR and CASTLES concur.