484 P.2d 208

**SAFEWAY STORES, INC., a corporation doing business in Arizona; and Wendell B. Coats, Appellants and Cross-Appellees,**

v.

**Minnie Lawanda HARRISON, Appellee and Cross-Appellant.**

**No. 1 CA–CIV 1270.**

Court of Appeals of Arizona,
Division 1,
Department A.

April 22, 1971.

As Modified on Denial of Rehearing
May 11, 1971.

Review Denied June 8, 1971.

**440**

Snell & Wilmer, by Roger W. Perry, Phoenix, for appellants and cross-appellees.

Otto H. E. Linsenmeyer and Frank E. Dickey, Jr., Phoenix, for appellee and cross-appellant.

CASE, Judge.

This is an appeal from the denial of appellants' (defendants in the trial court) motions for judgment notwithstanding the verdict and for a new trial in regard to the count of assault and battery, and a cross-appeal from the denial of appellee's (plaintiff in the trial court) motion for a new trial on the counts of false imprisonment, malicious prosecution, defamation and conversion. The parties will be referred to herein as they appeared in the trial court.

Plaintiff filed an action in the Maricopa County Superior Court seeking damages for assault and battery, false imprisonment, malicious prosecution, defamation and conversion of certain personal property. After plaintiff had rested the court granted defendants' motion for a directed verdict against plaintiff on the issue of defamation. The remaining issues were submitted to the jury upon general verdicts, together with one special interrogatory. The jury found in favor of all defendants on all issues except assault and battery, and upon this issue it awarded the plaintiff $2,000 general damages and $20,000 punitive damages. Thereafter, upon defendants' motion, the court granted a new trial conditioned on the plaintiff's rejection of a remittitur of $1500 in the compensatory damage award. Said remittitur was accepted and the motion for new trial was thereafter denied.

Defendants' appeal questions the sufficiency of the evidence to support an award of punitive damages while plaintiff's cross-appeal presents various questions regarding the four remaining counts. The following is a brief statement of the facts necessary for a determination of the issues raised.

On October 7, 1967, plaintiff entered the Safeway grocery store at Scottsdale and

Thomas Roads to purchase some items. After securing a shopping cart which had a large basket in front and a "baby seat" in the rear below the handle, plaintiff placed a large empty carton in the basket and began shopping. She selected some frozen orange juice, a carton of cigarettes, a package of meat and a couple of cans of dog food before the incident in question occurred. The evidence of what occurred thereafter is contradictory. Plaintiff testified that while placing the dog food cans in the cart, the meat and some packages of cigarettes (the carton selected had the end flap torn off) fell to the floor through holes in the "baby seat". After a second and similar occurrence plaintiff testified she placed the meat and carton of cigarettes in her open purse to prevent them from again falling. Defendant Coats, an Assistant Manager of the Safeway Store, testified that he noticed plaintiff pushing her shopping cart which contained in the "baby seat" her purse, together with a carton of cigarettes and a package of meat which were situated next to the purse. After defendant turned down an aisle, disappearing from Coats' vision for a moment, Coats again noticed her but testified that the meat and cigarettes were not visible and that her purse was closed.

Further testimony revealed that Coats approached the plaintiff and grabbed her purse out of the "baby seat". Plaintiff then tried to recover it and in the process was pushed by Coats against her shopping cart, resulting in a bruise to her hip. Coats then tossed the purse to Sherinian, a stockboy of Safeway's, who carried the purse to a small office within the store.

Immediately after the shoving incident, plaintiff returned home though Coats requested that she stay. Coats testified that while she was backing her car out of a parking place he notified her that she was under arrest for shoplifting. Plaintiff denied hearing said charge. Upon arriving at her home plaintiff related the incident to a friend who called Safeway and demanded return of the purse. Upon Safeway's refusal, plaintiff voluntarily returned to the store where she was questioned and subsequently arrested.

Plaintiff was booked at the Scottsdale City Jail and after a few hours was released on bond. On November 9, 1967, plaintiff was tried and acquitted in the Scottsdale City Court on a charge of shoplifting. The instant civil action followed.

■ In deciding whether the jury's award of punitive damages is supported by the evidence we must view the record in a light most favorable to upholding said award. Kubby v. Crescent Steel, 105 Ariz. 459, 466 P.2d 753 (1970). One of the prerequisites necessary to support an award of punitive damages for assault and battery is the element of malice or its equivalent. In Reah v. Jupin, 68 Ariz. 335, 206 P.2d 558 (1949), our Supreme Court asserted:

"There is no question under our law but that malice is a basis for punitive damages in an action for assault and battery. Malice may be express or it may be implied from the nature of the acts complained of and the surrounding circumstances.

\*   \*   \*   \*   \*   \*

"Also, as a general rule, exemplary or punitive damages may be allowed for an assault and battery committed wantonly, maliciously, or under circumstances of aggravation." 63 Ariz. at 336, 337, 206 P.2d at 559.

In viewing the facts we must be cognizant of Section 13–673 A.R.S., which recites:

"A person who wilfully takes possession of any goods, wares or merchandise offered for sale by any wholesale or retail store or other mercantile establishment without the knowledge or consent of the seller, with the intention of converting such goods, wares or merchandise to his own use without having paid the purchase price thereof, is guilty of shoplifting or wilful concealment, and upon a conviction therefor is guilty of a misdemeanor."

**442**

This Court has interpreted the shoplifting statute to no longer require asportation or the carrying away of the goods so as to dispossess the owner for an appreciable length of time. State v. Allen, 1 Ariz.App. 161, 400 P.2d 589 (1965).

The sole testimony of plaintiff relating to the assault and battery is as follows:

"A: Then I continued on around to the corner of the aisle. As I started around the corner, someone spoke to me from behind.

\* \* \* \* \* \*

"A: And as I turned around the party moved over to this side, and I said, 'I beg your pardon.' I didn't understand what he said to me.

\* \* \* \* \* \*

"Q: And which way did you turn?

"A: This way. I said, 'I beg your pardon.' My purse was yanked up in the air and my billfold went that way (indicating).

"Q: Like that (indicating)?

"A: Yes. And I turned around to reach for my purse, and he yelled for someone else, and someone else came along and took my purse, and I picked my billfold off the floor.

"Q: Do it.

"A: I reached for my purse, and he shoved me back against the cart (witness demonstrating).

\* \* \* \* \* \*

"Q: And it fell off to the right side?

"A: Yes. He shoved me back up. He was closer to me than you were.

"Q: Is that distance approximately correct?

"A: He was maybe a little closer.

"Q: How about this, about a foot? A foot?

"A: Yes.

\* \* \* \* \* \*

"Q. The person who shoved you, how did he shove you?

"A: Yes.

"Q: With his hand (indicating)?

"A: With the right hand, yes.

"Q: And pushed you into what?

"A: The cart.

\* \* \* \* \* \*

"Q: Who was the person who took the purse from you in the store?

"A: Mr. Coats.

"Q: Did you know the gentleman at the time?

"A: No, sir.

\* \* \* \* \* \*

"Q: And at the time the purse was taken from you you indicated that you had been shoved by Mr. Coats; is that correct?

"A: Yes.

"Q: And when you were shoved, which direction did you go?

"A: Back against the cart.

"Q: And as a result of hitting the cart, did you sustain any injuries?

"A: A bruise on the hip.

"Q. Was that the extent of it?

"A: Yes."

■ From these facts we find nothing more than a simple battery which lacks the necessary malice or aggravation to support the award of punitive damages.

An equally sound basis for the above conclusion is that Coats' acts of grabbing the purse, retaining it, and shoving plaintiff were incidental to his duties as an assistant manager and that at most he acted mistakenly in precipitating the incident. See Winn & Lovett Grocery v. Archer, 126 Fla. 308, 171 So. 214 (1936). Sutherland has discussed such conduct in relation to punitive damages as follows:

"The damages are allowable only when there is misconduct and malice, or what is equivalent thereto. A tort committed by mistake, in the assertion of a supposed right, or without any actual wrong intention, and without such recklessness or negligence as evinces malice or conscious disregard of the rights of others will not warrant the giving of damages

for punishment where the doctrine of such damages prevails." 2 Sutherland on Damages § 393 at 1280 (4th Ed. 1916).

Plaintiff's cross-appeal alleges various errors in regard to the counts of false arrest, malicious prosecution, slander and conversion and requests the granting of a new trial as to each count.

■ Plaintiff complains of error in the instruction on probable cause which she alleges would have materially altered the verdict with regard to false arrest and malicious prosecution. The instruction in question reads as follows:

"In determining probable cause, if you believe that the carton of cigarettes and the package of meat were in the plaintiff's purse, and the purse was closed, then there was probable cause for the defendant Coats to believe plaintiff guilty of the offense, and you must find for the defendant on the issue of malicious prosecution.

"If you believe that the carton of cigarettes and the package of meat were inside the plaintiff's open purse, then there is no probable cause and you must then determine the existence of malice on the part of defendant Coats."

Our Supreme Court has defined probable cause in malicious prosecution actions as:

"[A] reasonable ground of suspicion, supported by circumstances sufficient to warrant an ordinarily prudent man in believing the accused is guilty of the offense. (citing cases) What facts are sufficient to constitute probable cause is a question of law. The test generally applied is: upon appearances presented to the defendant, would a reasonably prudent man have instituted or continued the proceeding?" McClinton v. Rice, 76 Ariz. 358, 367, 265 P.2d 425, 431 (1953).

On the facts of the case at bar we find the instruction was proper. Since the instruction was proper, we find no grounds for the granting of a new trial in relation to false arrest or malicious prosecution.

At the end of plaintiff's evidence the court granted defendants' motion for directed verdict on the count of slander, indicating that plaintiff failed to establish a prima facie case. A perusal of the record reveals that plaintiff has failed to meet her burden of proving by means of colloquium that the defamatory statement applied to her. Accordingly, we find no error.

Finally, plaintiff questions the correctness of the instruction and interrogatory regarding conversion. The interrogatory reads:

"Did any employee of Safeway Store, Inc., steal $10.07 from the plaintiff?"

The instruction reads:

" 'Conversion' is defined as any distinct unauthorized act of dominion or ownership by one person over personal property belonging to another, and is inconsistent with her rights therein."

■ The instruction correctly states the Arizona law of conversion in accordance with Shartzer v. Ulmer, 85 Ariz. 179, 333 P.2d 1084 (1959). The interrogatory unfortunately used the verb "steal" to describe defendant's action. This verb is commonly construed to mean to take or appropriate without right or leave with intent to keep or make use of wrongfully. See Webster's Seventh New Collegiate Dictionary. This definition differs from that of conversion wherein neither good faith nor bad faith, care nor negligence, knowledge nor ignorance are required elements. Markel v. Transamerica Title Ins. Co., 103 Ariz. 353, 442 P.2d 97 (1968), cert. denied, Phoenix Title & Trust Co. v. Markel, 393 U.S. 999, 89 S.Ct. 484, 21 L.Ed. 2d 463 (1968). We find that the jury's answer of "no" to the interrogatory affected the general verdict to such an extent that plaintiff is entitled to a new trial on the count of conversion. Feldmann v. Connecticut Mutual Life Ins. Co., 142 F.2d 628 (8th Cir. 1944).

The foregoing requires us to reverse the lower court's judgment as to the count of assault and battery and enter judgment

for plaintiff in the amount of $500 with no award of punitive damages; affirm the lower court's judgment in relation to the counts of false imprisonment, slander and malicious prosecution; and order a new trial on the count of conversion. The lower court's judgment is therefore reversed in part, affirmed in part, and remanded for a new trial in relation only to the count of conversion.

STEVENS, P. J., and DONOFRIO, J., concur.