535 P.2d 1059

**WESTERN COACH CORPORATION, an Arizona corporation, Appellant,**

**v.**

**Perry O. KINCHELOE and Lavene F. Kincheloe, husban dand wife, individually and as co-partners doing business as Santa Catalina Mobile Home Park, a partnership, Appellees.**

**No. 2 CA–CIV 1818.**

Court of Appeals of Arizona, Division 2.

May 23, 1975.

Rehearing Denied July 1, 1975.
Review Denied Sept. 18, 1975.

Horton C. Weiss, Tucson, for appellant.

Everett, Bury & Moeller, P. C. by J. Michael Moeller, Tucson, for appellees.

## OPINION

HOWARD, Chief Judge.

This is an appeal from a judgment in favor of appellees, defendants below, in a suit instituted by appellant, plaintiff below, to recover damages for the alleged wrongful detention of a mobile home. The case was tried to the court, sitting without a jury, and the basis for the court's ruling in favor of appellees was that appellant had not sustained its burden of proof.

Appellant, seeking to recover damages for appellees' alleged wrongful detention of the mobile home, had the burden of establishing the conversion. Stewart v. Lee-Stewart, Inc., 5 Ariz.App. 216, 425 P.2d 118 (1967). Although appellant presents three questions for review, we need answer but one, i. e. the sufficiency of the evidence to support the judgment below.[1]

The evidence taken in a light most favorable to support the judgment is as follows. The subject mobile home was located on a space rented by appellees to people named Griffith. The Griffiths departed after advising appellees they had sold or rented the mobile home to some people who were going to move it out of the trailer park. According to Mrs. Kincheloe, she was never contacted by Western Coach regarding repossession of the mobile home.

The Griffiths left on July 9, 1973, and Mrs. Kincheloe was hospitalized from August 2nd to August 28th. She was in bed for ten days prior to her hospitalization

---

1. The other questions concern the superiority of a "security interest" to a landlord's lien and the refusal to admit into evidence a writ-ten assignment to appellant of the "security interest".

and during that period one of the tenants informed her that someone had gone to the rear of the park and was attempting to remove a mobile home. She testified:

"Well, they told me somebody had said something about, well, has the rent been paid, and the guy that was towing the vehicle, pulling it out, said, if there is rent due on it, I don't want anything to do with it, and he unhooked it and he left it sitting half on the lot and half off the curb and it was at this junction in time that I then decided it needed to be moved to the storage yard because, obviously, I didn't know who was trying to take it. I thought maybe it was being stolen. I had no idea who was taking it out."

According to this witness, the park was operating itself during the period of her hospitalization because her husband was trying to take care of his business in Tucson and Phoenix, and during that period the tenants co-operated by assisting her.[2] After learning of the attempted removal of the mobile home, Mrs. Kincheloe contacted someone at Jim Blaylock Mobile Homes, Inc. to find out who the mortgage holder was. She was informed that it was Nutter and Company in Phoenix and therefore placed a call to one Ed Keen at Nutter and Company. She identified herself and the location of her mobile home park and informed him "that we had a trailer that I thought that they had an interest in that had been abandoned." According to Mrs. Kincheloe, that was the only conversation she had with anybody in connection with the Griffith's trailer except for hiring a Mr. Pratt to move it into an enclosed storage yard.

Mr. Kincheloe admitted to having had a telephone conversation with the lawyer for Western Coach sometime early in August and that the lawyer had made a demand for release of the mobile home to Western Coach. He also testified:

"Q. And do you remember me asking you to contact your attorney and converse with him regarding the legality of your holding that trailer for rent that was due and owing?

A. I remember you suggesting that.

Q. Right, but you told me that you would not release the trailer until you got the rent?

A. That is right, I told you that we would not release it until you paid the rent, and you suggested that I talk to the lawyer and that is what I did. And in the meantime, the Sheriff came to get it for back taxes.[3]

THE COURT: In the meantime; you mean before you talked to your lawyer?

THE WITNESS: Before he ever got back to me again, you know, because that was the way the conversation was left, because he suggested that I talk to the lawyer to find out about this landlord lien bit. And in the meantime, the Sheriff came and got it."

There was some testimony by Mr. Kincheloe which would seem to indicate that he was aware of Western Coach's repossession attempts. He did, however, testify

---

2. Responsibility for running the trailer park was Mrs. Kincheloe's as her husband was engaged in another full-time business pursuit.

3. Western Coach presented evidence in the form of two checks payable to Santa Catalina Mobile Home Park to prove that it had tendered the unpaid rent claimed by the Kincheloes. One check, dated August 5, 1973, in the amount of $79.81, was purportedly tendered about August 8, 1973, and refused. The other check dated August 11, 1973, in the amount of $104 was purportedly tendered on August 14, 1973 and refused. Both checks contained, inter alia, the following notations:

"Trailer Ransom being paid under strict protest. . . ."

We find no merit in appellant's contention that it had paid the rent the Kincheloes were requiring. Issuance of a check is not payment unless the creditor accepts it as such. Empire-Arizona Copper Co. v. Shaw, 20 Ariz. 471, 181 P. 464 (1919). A tender of payment by check is not legal tender where, as here, objection is made and payment in cash is insisted upon. Margulus v. Mathes, 339 Ill. App. 497, 90 N.E.2d 254 (1950); Schultz v. Campbell, 147 Mont. 439, 413 P.2d 879 (1966).

that he had no personal knowledge of the matter but received the information from his wife and tenants in the park. (In a colloquy between the court and appellees' counsel, the court indicated awareness of the fact that Mr. Kincheloe's answers were based on secondhand information.)

Mr. Kincheloe denied seeing any documents or that any were presented to him showing that Western Coach had an interest in the mobile home or were entitled to possession of it. In fact the record is devoid of any showing that Western Coach showed the Kinchelos, or anyone acting in their behalf, any evidence of its right to possession of the mobile home.

The lower court apparently believed from this testimony that the Kinchelos did not know that the mortgage holder's interest in the mobile home had been assigned to Western Coach. Conversion is any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein. Shartzer v. Ulmer, 85 Ariz. 179, 333 P.2d 1084 (1959). When the Griffiths left on July 9, the mobile home was not removed from the leased space. Since the rent for the space had been paid up only until July 9th, the Kincheloes were not required to let the space remain occupied and lose an opportunity to rent it to someone else. Their actions in not returning the trailer to the rented space and placing it in the locked storage area was not unreasonable under the circumstances. Insofar as their testimony was concerned, which apparently the trial court believed, Nutter and Company was the mortgage holder and entitled to retake possession of the mobile home. Thus, their conduct in locking up the mobile home was not such act of dominion inconsistent with the mortgage holder's right as to amount to conversion. Safeway Stores, Inc. v. Harrison, 14 Ariz.App. 439, 484 P.2d 208 (1971). Under these circumstances where appellees had not dealt with the mobile home in a manner inconsistent with the rights of the one entitled to possession, there had to be a demand for possession and refusal before an action for conversion will lie. Davis v. American National Bank, 149 Colo. 34, 367 P.2d 325 (1961). The trial court apparently believed the Kincheloes' version of what transpired and concluded that they had no knowledge of Western Coach's interest in the mobile home until the telephone conversation with Western Coach's attorney. There was no evidence of a refusal to return, hence no unlawful detention, since the Sheriff took possession of the mobile home for unpaid taxes.

Appellant additionally claimed that the exterior of the mobile home was damaged and that certain items of furnishings were removed from the interior while in the Kincheloes' custody. Suffice it to say that there was sufficient evidence from which the trier of fact could have concluded that appellees were not responsible for either the damage or the missing items.

Although appellant's witnesses presented a different version of what transpired, the trial court apparently rejected their version and believed appellees' version. We defer to the trial court's evaluation of the credibility of the witnesses. Since there was sufficient evidence from which the lower court could have concluded that appellees were not guilty of conversion, we do not interfere.

Affirmed.

KRUCKER, J., and JACK G. MARKS, Superior Court Judge, concur.

NOTE: Judge JAMES D. HATHAWAY having requested that he be relieved from consideration of this matter, Judge JACK G. MARKS was called to sit in his stead and participate in the determination of this decision.