HEIN, APPELLANT, *v*. FOX, ET AL., RESPONDENTS.
No. 9109.
Submitted December 23, 1952. Decided March 23, 1953.
254 Pac. (2d) 1076.

Mr. Raymond F. Gray, Ronan, for appellant.

Mr. Lloyd I. Wallace, Mr. F. N. Hamman, Mr. J. A. Turnage, Polson, for respondents.

Mr. Gray and Mr. Wallace argued orally.

MR. JUSTICE FREEBOURN:

Clarence J. Hein sued John R. Fox for Fox' failure to finish drilling a well for water as agreed under the terms of a written contract. Trial by jury resulted in a verdict for Hein for $1,000. A new trial was ordered in the district court and from such order Hein appeals.

The complaint alleges and the answer admits: That "on or about the 6th day of February, 1950, the plaintiff and defendant entered into an agreement," which was in writing and signed by plaintiff and defendant, "whereby the defendant agreed to drill and develop a well six (6) inches in diameter * * * on the plaintiff's farm * * * That the defendant further agreed that he would * * * prosecute said drilling diligently and in workmanlike manner until final completion of said well. That the plaintiff * * * would pay the sum of Six Dollars and Fifty Cents ($6.50) per foot for the first 260 feet drilling, when casing was necessary as consideration for said defendant's work."

Defendant's answer admits that Hein paid Fox "the sum of Sixteen Hundred Fifty and no/100 Dollars ($1650.00) to apply on said contract and the drilling of said well." Fox' answer shows that he drilled one well to a depth of 250 feet, "but it became necessary to abandon said hole and seal the same off, by reason of the fact that the casing became broke." A second well was then commenced. Hein said Fox "just moved the rig ahead three or four feet and started another one." The second well was down 350 feet when the casing, according to the answer, "hit and struck a boulder" which ended all further drilling on Fox' part.

According to the provisions of the written agreement and contract, Fox, the contractor, had to "perform all the work required for the drilling, developing and testing of a six inch diameter well." The work had to be "prosecuted diligently * * * until final completion in full conformity with the provisions hereof," such provisions requiring "the contractor shall

not test the well upon its completion. The test to be used will be the equivalent to pumping a constant flow of water by operation of the pump intended for the well for a period of one (1) week.''

From the evidence it is plain that Fox never completed a well as agreed upon in the written contract.

Under the evidence the jury could have found that he was prevented from completing the well by hard luck while drilling and inability to secure needed six-inch casing and that he intended sometime in the future to complete the well. On the other hand, the jury could find and apparently did find that Fox had abandoned the drilling of and never intended to complete such well. The verdict for Hein bears out this conclusion.

The lower court gave as its reason for granting a new trial that: ''Clearly the complaint does not state facts sufficient to constitute a cause of action. In particular the contract sued on was not valid or binding for want of approval by the named agency. * * * The amount of $1000.00 awarded by the jury is not supported by a preponderance of the evidence.''

The words, ''want of approval by the named agency,'' have reference to that part of the contract providing that it ''shall not be valid or binding on the parties hereto unless approved by the duly authorized representative of the State Director of the Farmers Home Administration, United States Department of Agriculture, unless otherwise determined by the State Director the person who will countersign checks of the owner payable under this agreement will be such authorized representative.'' The two checks, covering the $1,650.00 paid by Hein to Fox were both countersigned by ''R. M. Sherick.''

The record shows that defendant by demurrer filed November 21, 1950, challenged the complaint upon the ground ''that said complaint and the whole thereof does not state facts sufficient to constitute a cause of action.'' This demurrer was overruled by the court on December 5, 1950.

Defendant again challenged the complaint by motion for nonsuit, when plaintiff rested, one of the grounds of such motion

being "that the complaint and the whole of it fails to state facts sufficient to constitute a cause of action against the defendant * * *" The motion for a non-suit was denied by the court.

These rulings upon demurrer and motion for non-suit indicate that the trial court upon these occasions believed the complaint did state facts sufficient to constitute a cause of action, although the complaint did not allege that the written contract between Hein and Fox had been approved by the named agency, the Farmers Home Administration, as provided for in the contract pleaded. By alleging that Hein had paid Fox $1,650 for drilling and that "defendant began drilling a well six (6) inches in diameter and worked part time on said well until the month of June 1950," the complaint, upon its face, showed that the parties had waived the provision of the contract requiring approval thereof by the named agency. Evidence of plaintiff in his case in chief showing that Hein had paid Fox $1,650 for drilling and that Fox had drilled the two dry holes and supporting the allegations of the complaint constituted a waiver of such approval by the named agency.

This court finds no good reason justifying the action of the trial court in changing its ruling on the sufficiency of the complaint between the time the demurrer and motion for non-suit were ruled upon and the ruling thereon made upon motion for a new trial.

We look with disfavor upon the practice followed by the trial court here and recommend that if a trial court believes a complaint is subject to demurrer, proper ruling thereon should be made at the earliest possible stage of proceedings, so that the pleading may be amended, where feasible, thereby avoiding wasted time, effort and expense.

The approval by the agency was a condition precedent to the actual carrying out of the contract and ceased to be such by reason of the waiver.

A waiver may be by mere voluntary expression of waiver and nearly always by continuing to render performance or by receiving further performance from the other party, with

knowledge that the condition has not been performed. 3 Corbin on Contracts, sec. 755, p. 918.

Then, too, where a party enters into a contract knowing that ▉ permission of government officers will be required during the course of performance, that such permission was not forthcoming when required does not constitute an excuse for nonperformance. See: 17 C. J. S., Contracts, sec. 463, page 953; Standard Oil Co. of New York v. Central Dredging Co. 252 N. Y. 545, 170 N. E. 137.

In addition to asking damages in the amount of $1,650 paid, Hein pleaded special damages in the amount of $1,000 for having been "without water for his stock, milking parlor and water for domestic purposes." According to Hein he obtained a license "to sell Grade A milk, on the strength of this well." Grade A milk "sells for very near double what cheese milk sells for." This license "was given me on the strength" of the well promised by Fox "and the water produced by it." Because of no well hein lost "the Grade A license."

R. C. M. 1947, sec. 17-301, provides: "For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom." And the trial court so instructed the jury.

By instruction the court permitted the jury to award Hein ▉ up to $1,650, and we think that the verdict of $1,000 finds support in the evidence, the weight and effect of which was for the jury.

Undoubtedly Fox anticipated striking sufficient water within the depths he had drilled, but water, like oil, when hidden from view beneath the earth's surface, has an elusive quality. In promising to complete a well which would produce water Fox took a chance, as evidenced by the written contract and the drilling done. Having taken Hein's money, the verdict seems to indicate that the jury felt Fox had not fulfilled his part of

the deal, the evidence showing that in the locality where Fox had drilled the two holes, although water had been encountered in wells at 35 and 50 foot depths, in others water was not found in sufficient quantity until depths of 750 and 800 feet had been reached.

The difficulties which Fox ran into and which discouraged further drilling could have been anticipated and their happening provided for by express stipulation in the contract. This was not done and the absence of provisions for such contingencies must be attributed to poor judgment, the result of which must fall on the shoulders of the party who suffers thereby.

Courts can give no solace where parties to a contract find ▓▓▓▓▓▓ themselves minus expected profit through failure to exercise care in drawing up such contract. What this court said in Hinerman v. Baldwin, 67 Mont. 417, 433, 215 Pac. 1103, 1108, well applies here, viz.: ''There is no legal impediment shown which would prevent the parties from entering into any contract which they saw fit, nor from expressing it in language of their own, and under such circumstances it is the duty of the court to give effect to the meaning and intention of the parties as expressed in the language employed. The court has no right to make a contract for the parties different from that actually entered into by them. 'Courts enforce contracts as made, unless good morals or public policy are contravened. They cannot create a new contract, nor can they permit the parties themselves to do so without the consent of all, upon any theory that the original contract was not the most beneficial or advantageous, or that the enterprise contemplated by its terms cannot be successfully operated under it.' 6 Cal. Jur. sec. 192.

''The duty is imposed upon 'parties entering into written contracts to see to it that the writing expresses the true agreement; and they should not be heard in a court of equity to complain of injury resulting from their own inattention or neglect. The effect of a different rule would be to destroy in a large measure the value of written instruments as evidence, to encourage negligence, and to open the door for the substitution

of parol for written evidence under the claim of mistake.' Grieve v. Grieve, 15 Wyo. 358, 89 Pac. 569, 9 L. R. A., N. S., 1211, 11 Ann. Cas. 1162.

"Whether the plaintiff made a good or a bad bargain is of no concern to the court. He was of legal age, and had all of the facts squarely and clearly before him long prior to the execution of the lease. Merely because the terms of the contract now appear unreasonable or burdensome affords no reason to permit him to avoid his contract. Frank v. Butte & Boulder Mining & Lumber Co., 48 Mont. 83, 135 Pac. 904; Pearce v. Metropolitan Life Ins. Co., 57 Mont. 79, 186 Pac. 687; State Bank of Darby v. Pew, 59 Mont. 144, 195 Pac. 852; Friesen v. Hart-Parr Co., 64 Mont. 373, 209 Pac. 986; Emerson-Brantingham Implement Co. v. Raugstad [65 Mont. 297] 211 Pac. 305; General Fire Extinguisher Co. v. Northwestern Auto Supply Co. [65 Mont. 371] 211 Pac. 308; McConnell v. Blackley [66 Mont. 510] 214 Pac. 64.

"When parties have reduced their contracts to writing, the writing is presumed to contain the final agreement arrived at between them and to express their real purpose and intent. The duty of the court is to enforce contracts, not to make new ones for the parties, however unwise the terms may appear. To permit the avoidance of written contracts upon such pretext would be to open the way to defeat the very purpose of contracts in writing."

Nor does the fact that Fox could not secure necessary six-inch casing, because of market shortage thereof which might be due to war or government regulation, relieve him of his duty under the contract, for, "In the absence of a statute to the contrary, conditions arising from a state of war in which this country is engaged will not ordinarily constitute an excuse for nonperformance of contract; and impossibility of performance arising from the acts of the legislature and the executive branch of government in war time does not, without more, constitute an excuse for nonperformance." 17 C. J. S., Contracts, sec. 463, pages 953, 954.

For the reasons stated the order granting a new trial is reversed and set aside and the cause is remanded with directions to enter an order denying a new trial and to enter judgment for the plaintiff in conformity with the verdict of the jury.

MR. CHIEF JUSTICE ADAIR, and ASSOCIATE JUSTICES BOTTOMLY and ANGSTMAN, concur.

MR. JUSTICE ANDERSON not being a member of the court at the time of the oral arguments took no part in the decision.