No. 13183

IN THE SUPREME COURT OF THE STATE OF MONTANA

1976

---

VETERANS REHABILITATION
CENTER, INC.,

                  Plaintiff and Appellant,

-vs-

EMMETT F. BIRRER,

                  Defendant and Respondent.

---

Appeal from:  District Court of the Eighteenth Judicial District,
              Hon. W. W. Lessley, Judge presiding.

Counsel of Record:

    For Appellant:

        Bennett and Bennett, Bozeman, Montana
        Lyman Bennett III argued, Bozeman, Montana

    For Respondent:

        Berg, Angel, Andriolo and Morgan, Bozeman, Montana
        Gregory O. Morgan argued, Bozeman, Montana

---

                Submitted:  June 4, 1976
                  Decided: JUL - 7 1976

Filed:

_Thomas J. Kearney_
                        Clerk

Mr. Justice John C. Harrison delivered the Opinion of the Court.

Plaintiff appeals from the judgment of the district court, Gallatin County, dismissing its complaint and allowing defendant to recover costs incurred in defense of the suit.

Plaintiff, a nonprofit Oregon corporation, and defendant Emmett Birrer, entered into a contract under which defendant was to operate a retail business for plaintiff corporation in Bozeman, Montana. Under the express terms of the contract (1) plaintiff was to receive 6% of the gross income received in connection with the operation of the enterprise, (2) defendant was to receive 15% of the gross income, (3) the balance was to be applied to the operation of the business.

Birrer contributed approximately $19,500 to begin the business operation and he received a "manager's salary" of $200 per week during the period he operated the business. His total salary amounted to "about eleven thousand dollars". Birrer's wife also received "close" to $300 in salary during the same period. Plaintiff alleges there was an agreement between the parties involving the lease of a 1968 Chevrolet truck on a monthly basis for a fee of $50 per month. No payments were received pursuant to the alleged lease, and plaintiff claims that one full year's rental is due and has never been paid.

The total gross proceeds of the business operated by Birrer during the existence of the contract were $65,815.70. The inventory and business were later sold by Birrer to one Stocker. Plaintiff did not receive any percentage of the gross sales during the period of defendant's operation of the business and received no payments on the alleged lease of the truck.

Plaintiff contends, under the express terms of the contract, it is entitled to receive 6% of the gross receipts, plus the same percentage of the $10,000 received by Birrer upon sale of the business to Stocker, which amounts to $4,584.94, plus 6% annual interest upon that amount from August 27, 1972, the date of the cancellation of the contract between the parties. Plaintiff also argues it is entitled to receive reasonable attorney fees and costs pursuant to the terms of the contract and that it should receive rental fees of $600 for the period of one year, during which Birrer was in possession of the truck, pursuant to the alleged lease agreement.

Defendant Birrer counters that performance of the contract was impossible due to the lack of funds available after payment of business debts and expenses. He urges the only reasonable interpretation of the contract as a whole was that the intent of the parties was to pay plaintiff and defendant pursuant to the contract only in the event of the existence of profits above operating expenses. Birrer contends, and the district court agreed, that his salary was a reasonable and justifiable expense of operation of the business and was rightfully paid. Birrer also contends the district court's finding that no oral lease existed between the parties is clearly supported by the testimony and evidence presented at trial and should be allowed to stand.

Generally the term "gross revenue" means gross receipts of a business before deduction for any purpose except those items specifically exempted. Public Service Co. v. City and County of Denver, 153 Colo. 396, 387 P.2d 33, 36. At 38 C.J.S. Gross 1082, it is said:

- 3 -

"The phrase [gross profits] refers generally to the excess of selling price over cost price without deducting the expenses of resale and other costs of doing business; the gross amount of sales made, after deducting only the cost, import duties, and carriage * * *."

Here, the contract expressly provides that plaintiff shall "without regard to operating gain or deficit, receive from the first moneys six percent of the gross income in connection with the operation of the enterprise * * *."

Section 13-704, R.C.M. 1947, provides:

"The language of a contract is to govern its interpretation, if the language is clear and explicit * * *."

The intent of the contracting parties is to be ascertained from the contract itself, if possible. Universal Under. Ins. Co. v. State Farm Mut. A. Ins. Co., 166 Mont. 128, 531 P.2d 668, 32 St. Rep. 102. In Fulton v. Clark, _____Mont._____, 538 P.2d 1371, 32 St.Rep. 808, 811, the Court stated:

"The intent of the parties * * * must be determined from the written agreement alone, if possible. Section 13-705, R.C.M. 1947. If the language of the agreement is clear and explicit the language must govern its interpretation. Section 13-704, R.C.M. 1947."

Here, the intent of the contracting parties was clear that plaintiff was to receive 6% of the gross income of the business. Thus plaintiff is entitled to that percentage of $65,815.70, or the amount of $3,948.94.

This Court in Hein v. Fox, 126 Mont. 514, 520, 521, 254 P. 2d 1076, held:

"Courts can give no solace where parties to a contract find themselves minus expected profit through failure to exercise care in drawing up such contract. What this court said in Hinerman v. Baldwin, 67 Mont. 417,

- 4 -

433, 215 Pac. 1103, 1108, well applies here, viz:
'There is no legal impediment shown which would
prevent the parties from entering into any con-
tract which they saw fit nor from expressing it in
language of their own, and under such circumstances
it is the duty of the court to give effect to the
meaning and intention of the parties as expressed
in the language employed. * * *

"'* * *

"'Whether the plaintiff made a good or a bad bargain
is of no concern to the court. He was of legal age,
and had all of the facts squarely and clearly before
him long prior to the execution of the lease. Merely
because the terms of the contract now appear unreasonable
or burdensome affords no reason to permit him to avoid
his contract. * * *'"

In Universal Under. Ins. Co. v. State Farm Mut. A. Ins.
Co., 166 Mont. 128, 531 P.2d 668, 32 St.Rep. 102, 107, this Court
approved the language of the federal district court in that court's
decision in Kansas City Fire and Marine Insurance Company v. Clark,
217 F.Supp. 231, 235, wherein Judge Jameson, in interpreting the
applicable Montana law said:

"'* * * if the intention of the parties is clear,
the courts have no authority to change the contract
in any particular, or to disregard the express
language the parties have used.'"

Here, there is no question but that the contract drafted
and agreed upon by the parties entitled plaintiff corporation to
a 6% share of the gross income of the business operated by defendant
Birrer.

Plaintiff also contends it is entitled to a 6% share of the
proceeds of the sale of the business and its inventory to Stocker,
upon recission of the contract. However, the contract is very clear
in giving defendant the right to all the proceeds of such sale. The
contract provides:

"10. Upon termination or cancellation of this
contract, next after payment of all moneys due

- 5 -

Center (plaintiff), Birrer (defendant) shall be
entitled to all the stock, goods, wares, merchandise,
equipment, supplies and other property used in the
operation of said business."

Clearly, Birrer had full right to the inventory, etc. and would

be entitled to retain the proceeds of the sale of such items, after

payment of the amounts due.

The district court found no enforceable lease agreement

existed between the parties in regard to a certain Chevrolet

truck, but rather that there was a transfer to defendant of the

vehicle, and thus no rental monies were due from defendant to

plaintiff.  However, testimony given at trial by Birrer and by

a Mr. Booth, on behalf of plaintiff corporation, indicates the

parties had arrived at an agreement regarding the use of this

truck by Birrer which in substance, if not in form, amounted to a

lease arrangement.  This testimony indicates the existence of a

agreement whereby defendant Birrer was to receive the possession

of the vehicle and legal title to it for a consideration of $1.00,

to protect plaintiff from any liability in connection with

Birrer's operation of the truck.  Birrer was to pay plaintiff a

monthly rental fee of $50 and return title to plaintiff at termina-

tion of the lease agreement.

The conduct of the parties demonstrates the existence

of an agreement to lease the vehicle.  Birrer took possession of

the vehicle and used it in the operation of his business and

returned it to plaintiff upon demand.  Section 13-603, R.C.M.

1947:

"An implied contract is one the existence and
terms of which are manifested by conduct."

Section 13-713, R.C.M. 1947:

> "A contract may be explained by reference to
> the circumstances under which it was made and
> the matter to which it relates."

In Rentfro v. Dettwiler, 95 Mont. 391, 398, 26 P.2d 992, the
Court stated:

> "The conduct of the parties manifests the existence
> and terms of an implied contract, having all the
> essential elements to render it valid and binding."

In the instant case, the evidence of the conduct of the
parties supports the conclusion that a lease of the vehicle was
intended by the parties and that rental fees in the amount of
$600 are due from Birrer to plaintiff corporation.

> Under the express terms of the contract:

> "20. In case suit or action is instituted by
> either party hereto, the prevailing party shall
> be entitled to reasonable attorneys fees and
> costs * * *."

In Roseneau Foods, Inc. v. Coleman, 140 Mont. 572, 579, 374 P.
2d 87, it is stated:

> "* * * the general rule is that attorney's fees are
> not recoverable by a successful litigant either in
> law or equity except when they are expressly provided
> for by contract or statute."

See: State Highway Comm'n v. Heltborg, 140 Mont. 196, 369 P.2d
521; Nikles v. Barnes, 153 Mont. 113, 454 P.2d 608.

In view of the express terms of the agreement between
the parties hereto, the matter is remanded to the district court
to determine reasonable attorney fees and costs.

The judgment of the trial court is reversed. The cause
is remanded to that court to enter judgment for plaintiff in
compliance with this opinion.

_____
Justice

- 7 -

We Concur:

_____
Chief Justice

_____

_____

_____
Justices.