No. 00-489

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 56N

JOHN S. HENDERSON,

Plaintiff, Respondent, and Cross-Appellant,

v.

THE ESTATE OF SHERILL W. HENDERSON and,
VERA V. HENDERSON,

Defendants, Appellants, and Cross-Respondents.

APPEAL FROM:    District Court of the Seventh Judicial District,
In and for the County of Richland,
The Honorable Richard G. Phillips, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Loren J. O'Toole, II, O'Toole Law Firm, Plentywood, Montana

For Respondent:

Lorraine A. Schneider, Schneider, Howe and Quintana, Glendive, Montana

Submitted on Briefs: January 18, 2001

Decided:  March 28, 2002
Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1    Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent.  The decision shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

## I. INTRODUCTION

¶2    The Appellants, Vera Henderson (Vera) and the Estate of Sherill Henderson (Sherill), appeal from two orders of the Seventh Judicial District Court, Richland County, holding their contract with the Respondent, John S. Henderson (John, also known as Jack), valid and awarding specific performance and damages to John.  John cross appeals regarding the amount of damages determined by the District Court.  We affirm.

¶3    Vera presents five issues on appeal.  John presents two issues on cross appeal.  While the parties divide and phrase the contract issues differently, we reframe the issues on appeal as follows:

¶4    1. Did the District Court err in finding that the intentions of the parties resolved the ambiguity in the contract in John's favor?

¶5    2. Did the District Court err in holding that none of the alterations to the contract were material?

¶6    3. Did the District Court err in holding that the mineral interests were transferred with the contract?

¶7    4. Did the District Court err in finding an anticipatory breach by Sherill rather than an anticipatory breach by John?

¶8    5. Did the District Court err in its determination of the damages awarded to John?

¶9    We affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

¶10    John is the son of Vera, his mother, and Sherill, his father.  John has five siblings.  In 1979, John finished college in Billings, returned to Sidney, and was the only child of Vera and Sherill to work on his parents' farm from that time on.  On January 4, 1986, John, Sherill and Vera signed a writing, the contract in dispute, by which Vera and Sherill agreed to sell their farm to John when their soil Conservation Reserve Program (CRP) contract ended.  The parties' agreement is a one page, handwritten document that was composed for the most part by Sherill with additions by John.[1]  On May 16, 1986, the parties enrolled the farm in the CRP under a 10 year contract.

¶11    In 1996, a disagreement between John and Sherill regarding their contract developed.  Sherill attempted to re-enroll the farm in a one year CRP extension. John opposed this extension and the government eventually

denied the extension due to John's refusal to endorse the re-enrollment form. Sherill also expressed that he would not transfer the oil and gas mineral interests on the farm as part of the contract with John. In 1997, John filed a complaint seeking, among other things, specific performance of the written agreement. Sherill and Vera answered and asserted that various defects invalidated the agreement. All three parties were deposed and their full deposition testimonies were later admitted into the record.

¶12 The parties both moved for summary judgment. After issuing an Order granting summary judgment to John regarding the validity and terms of the contract, the District Court held a trial on the issue of damages. Between the Order granting summary judgment and the trial, Sherill passed away and his estate was substituted into these proceedings. During the trial, an additional issue arose regarding an ambiguity in the contract. Following the trial, the District Court entered Findings of Fact, Conclusions of Law and Judgment (Judgment) which addressed the ambiguity issue and which awarded certain money damages to John. These damages were less than those originally sought by John. This Judgment also held that the court's earlier Order already granted specific performance to John.

¶13 On appeal, the parties dispute the validity, terms, breach and allowable damages from the contract. Further details regarding the contract are discussed below under each issue.

[1]For some reason unknown to this Court, the original of the contract was never introduced into the record and is still in John's possession.

## III. STANDARD OF REVIEW

¶14 As mentioned, all but two of the issues in this case were decided on summary judgment. We review summary judgment rulings de novo. Cape-France Enters. v. In re Estate of Peed, 2001 MT 139, ¶ 13, 305 Mont. 513, ¶ 13, 29 P.3d 1011, ¶ 13. A party seeking summary judgment must demonstrate that there are no genuine issues of material fact and that the party is
 entitled to judgment as a matter of law. Cape-France, ¶ 13-14. All the issues decided on summary judgment in this case involve construction and interpretation of the written agreement between the parties, which is a matter of law decided by the court. Ophus v. Fritz, 2000 MT 251, ¶ 19, 301 Mont. 447, ¶ 19, 11 P.3d 1192, ¶ 19. Therefore, like summary judgment, conclusions of law regarding construction and interpretation of a contract are reviewed de novo. Ophus, ¶ 19.

¶15 The issues determined by the District Court after the trial, which include the ambiguity in the contract and the money damages awarded to John, each involve questions of fact. We review findings of fact to determine whether those findings are clearly erroneous. Eschenbacher v. Anderson, 2001 MT 206, ¶ 22, 306 Mont. 321, ¶ 22, 34 P.3d 87, ¶ 22 (citing Interstate Prod. Credit Ass'n v. DeSaye (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287). A finding of fact is clearly erroneous if substantial evidence does not support it, if the district court misapprehended the effect of the evidence, or, if after reviewing the record, this Court is left with a firm conviction that a mistake has been made. Eschenbacher, ¶ 22.

## IV. DISCUSSION

¶16 1. Did the District Court err in finding that the intentions of the parties resolved the ambiguity in the contract in John's favor?

¶17    The first issue on appeal involves a term in the contract, written by Sherill, which reads: "Jack is buying the farm we own at the end of the present Soil Conservation Reserve Program contract that ends in the year of 1997."[2] (Emphasis added).  This contract term is ambiguous because the "present" CRP contract signed by the parties on May 16, 1986, was a 10 year program that ended in 1996 rather than 1997.

[2]As mentioned, the original contract was not admitted into evidence. The word "contract" after the word "Program" in the above clause is cut off on the copies supplied for the record. The word on the record copy is actually "contr." This discrepancy has not been raised as an issue by any of the parties, so the Court assumes the word is "contract" for purposes of this appeal.

¶18    Vera asserts that the contract term is clear and unambiguous and that Sherill's attempts in 1996 to extend the CRP by one year demonstrate there was no meeting of the minds regarding what year John was to buy the farm.  Therefore, Vera argues that no valid contract existed between the parties.

¶19    In contrast, John argues that Sherill made a mistake when he wrote this term of the contract and thereby created the ambiguity.  He further asserts that there is substantial evidence the parties all understood that John would be able to buy the farm in 1996 when the original CRP enrollment ended.

¶20    Because this issue was not raised in the summary judgment motions, Sherill never testified at his deposition regarding his understanding of this term of the contract.  Further, Sherill did not testify regarding this term at trial because he passed away before trial.

¶21    The District Court concluded that an ambiguity did exist in the contract.  The court based its finding that John was to buy the farm in 1996 on the testimony and evidence regarding the parties' intentions.  The court found: "The only evidence presented during the trial was that the reference to 1997 was a mistake by the drafter, Sherill Henderson, and that the contract was to be completed when the land came out of the Conservation Reserve Program at the end of the present existing contract."  The court also concluded that "[t]he ambiguity is to be construed more strongly against the person causing it."

¶22    After a careful review of the record, we conclude that the District Court's findings and conclusions were correct. An ambiguity exists when the contract wording is reasonably subject to two different interpretations. Wray v. State Compensation Ins. Fund (1994), 266 Mont. 219, 223, 879 P.2d 725, 727.  Whether an ambiguity exists is a question of law.  SAS Partnership v. Schafer (1982), 200 Mont. 478, 482, 653 P.2d 834, 836.  We agree with the District Court that the above language at issue created an ambiguity, contrary to Vera's assertions, because the word "present" and the phrase "that ends in the year of 1997" do not indicate the same year.

¶23    When a contract term is ambiguous, its interpretation requires a determination of the real intention of the parties at the time of contracting, which is a question of fact.  SAS, 200 Mont. at 482, 653 P.2d at 836.  See also Klawitter v. Dettmann (1994), 268 Mont. 275, 281, 886 P.2d 416, 420-21; Gray v. City of Billings (1984), 213 Mont. 6, 10, 689 P.2d 268, 270; Dooling v. Casey (1968), 152 Mont. 267, 275, 448 P.2d 749, 754.  Accordingly, extrinsic evidence is admissible to determine the parties' intent.  Ophus, ¶ 29.  See also § 28-2-905, MCA (extrinsic evidence admissible when a mistake in the writing is put in issue); § 28-3-301, MCA (contracts interpreted to give effect to the mutual intention of the parties at the time of contracting).  Further, it is the duty of the court to enforce a contract if the parties intended that one exist.  Conagra, Inc. v. Nierenberg, 2000 MT 213, ¶ 31, 301 Mont. 55, ¶ 31, 7 P.3d. 369, ¶ 31; § 28-3-201, MCA.

¶24    We must therefore determine if the District Court's finding regarding the parties' intentions was clearly erroneous.  While Sherill was not able to testify at trial, we agree that the evidence demonstrates the parties

originally intended that John would be able to buy the farm in 1996. First, it is undisputed that in 1986, the parties initially enrolled the farm in a CRP program which was to end in 1996. In addition, John testified that he did not believe the parties could have known about a potential to extend the original 10 year CRP contract when they enrolled in 1986. Therefore, the 1986 CRP contract would not end in 1997 unless some additional action was taken by the parties.

¶25    John also stated that in May of 1996 when their disagreement about the extension arose, Sherill told him that he would not honor the contract. This demonstrates that Sherill's initial intent in 1986 was to sell the farm in 1996. John further testified that he intended to put his cattle on the property in the fall of 1996. Further, a letter from Vera was admitted as evidence at trial in which she states her understanding that Sherill no longer wanted to be bound by the contract. She also testified that Sherill attempted to extend the CRP without informing her, but rather used his power of attorney to sign her name to the CRP extension contract.

¶26    Further, Vera and Sherill's answer to John's complaint states that they "admit that it was agreed that some land [as indicated in the contract] was placed in CRP for 10 years." Finally, there is another term in the contract which reads: "In event of Death of myself and Wife, Jack (John) agrees to continue the Conservation Reserve Program contract till [sic] it expires." (Emphasis added). This clause indicates that the parties also likely intended the expiration of the "present" CRP contract to determine the time of sale in the ambiguous term of the contract. Therefore, there is substantial evidence that all three parties originally intended that the farm would be sold in 1996.

¶27    Virtually the only evidence that indicates the parties might have intended for John to buy the farm in 1997 is the fact that the contract term says 1997. However, as mentioned, this term is ambiguous. Further, as the District Court noted, ambiguities should be construed against the drafter, in this case, Sherill. Ophus, ¶ 31; § 28-3-206, MCA. That rule is especially appropriate where the party responsible for drafting the provision at issue seeks to interpret the language so as to defeat the contract. 17A Am. Jur. 2d Contracts, § 348 (1991). Therefore, we conclude the District Court was not clearly erroneous in finding that the parties intended a contract to be performed in 1996.

¶28       2. Did the District Court err in holding that none of the alterations to the contract were material?

¶29    Next, Vera argues that the contract is invalid because she asserts John made material alterations to the contract. She notes her belief that these alterations were made after the parties signed the original and that the alterations were made without her or Sherill's consent. She further asserts that the alterations created an issue of fact which precludes summary judgment because John believes that most of the alterations were either made before the three parties signed the contract or were made with Vera's consent. In contrast, John asserts that none of these alterations, regardless of when made, were material and therefore the contract remains valid. The District Court decided on summary judgment that none of the alterations were material. We agree.

¶30    Section 28-2-1703, MCA, allows a contract to be extinguished if a party makes a "material alteration" to a written contract. An alteration is material if it changes the legal effect of an instrument, changes the rights and liabilities of the parties or, in other words, gives a party something which the party did not originally have under the contract. Falligan v. School Dist. (1917), 54 Mont. 177, 179, 169 P. 803, 804 (alteration to make contract automatically renewable would have been material); Goss v. Trinity Sav. & Loan Ass'n (Okla. 1991), 813 P.2d 492, 495 (change in interest rate on note from 12.5% to 16.5% was material); Lipinski v. Title Ins. Co. (1982), 202 Mont. 1, 12, 655 P.2d 970, 975 (title insurance company's failure to defend lawsuit based on language altered in settlement agreement without insured's consent showed alteration was material); Carnell v. Watson (1978), 176 Mont. 344, 349, 578 P.2d 308, 311 (broker's alteration of listing agreement with seller to change terms of

down payment for buyer was material); Smith v. Barnes (1915), 51 Mont. 202, 211, 149 P. 963, 966.

¶31     John made a number of alterations to the contract, three of which are at issue here.  First, after the phrase "[w]e understand that Jack," John inserted "is buying" instead of "would like to by [sic]" at the beginning of the contract.  John testified that this was to correct the grammar.  Vera asserts this change was made after she and Sherill signed the contract and therefore creates an issue of fact precluding summary judgment.  She also asserted in the District Court that the change is material because it changes the tone of the document from an agreement to contract in the future to a present contract.  The District Court held that "the balance of the language in this document clearly establishes the intent of the parties that it is intended to be a present contract. . . . [and] this [alteration] does not change the legal rights, interests, or obligations of the parties."  The court also cited specific examples of present language used in the contract.

¶32     We agree that, regardless of when this change was made, it is immaterial because it does not affect the legal rights of the parties in any way.  As discussed above, all the parties viewed the document as a contract for John to buy the farm.  In response to the question, "What was your intention in writing out this document?", Sherill stated, "To sell the farm to Jack."  Further, language later in the document, such as "[w]e hereby agree to sell all the land except the farm building site" and "[t]he price we agree to is $100 per acre" indicates an intention by the parties to bind themselves to set terms at the time of signing.  Therefore, the contract was not an agreement to contract in the future and the District Court was correct in holding this change immaterial and granting summary judgment to John.

¶33     Second, John added a clause to the end of the contract which reads: "2/3 CRP payment to S.W.H. as down payment on farm and rent for pasture and hay ground."  John asserts that this change only memorialized an additional detail of their agreement.  He asserts that the change is supported by the fact that on May 16, 1986, he signed over all his CRP payments to Sherill and Vera per their agreement.  Again, Vera asserts this change was made after she and Sherill signed and was without her consent.  The District Court held this change was not material because it was "merely an explanation of why the parties, through other arrangements and documents, provided that the CRP payments would be received by Sherill."

¶34     Again, regardless of when this change was made, it is also immaterial because the parties all agree that this addition did not change the price that John would pay for the farm.  Rather, the parties agree that despite this addition, John would pay according to the term Sherill wrote which reads: "[t]he price we agree to is $100 per acre for all land except the described building site."  John does not assert that this price would be reduced by any of the previous CRP payments and agrees that the he would have to pay $100 per acre to buy the farm.  Therefore, this addition did not change the rights or liabilities of the parties and the District Court was correct in holding this change immaterial and granting summary judgment to John.

¶35     Finally, many years later, John added the legal description of the farm at the top of the document in terms of township and range.  However, the portion of the contract handwritten by Sherill states:

> We understand that Jack is buying the farm we own . . .
> . . .
> We hereby agree to sell all the land except the farm building site including buildings - (House, Barn, yard buildings including all outbuildings).  The building site would be including all land in the portion fenced to the West of buildings and wind break from joining Iverson pasture (40 acres) down to the County road on the North side of farm.
> . . .
> The price we agree to is $100 per acre for all land except the described building site.

. . .

This includes lands according to ASCS map with the exclusion of land and Building site listed above. (Emphasis added).

¶36   Vera argues that John's alteration is material because she and Sherill acquired different portions of their property at different times, so the contract is unclear as to what is indicated by "the farm." Further, she asserts John's addition changed the land subject to the contract by failing to exclude the farm building site from the legal description. Vera asserts that therefore, the object of the contract is unascertainable. Vera also notes this change was made after she and Sherill signed and without her consent. John asserts that this change was not material because it describes the farm already indicated in the contract. The District Court held that the alteration was not material because Vera and Sherill "only owned one farm [and therefore], the object of the contract is readily ascertainable."

¶37   Again, we agree with the District Court. First, while Vera and Sherill may have acquired different portions of the property at different times, there is no dispute that all these acquisitions were made before the parties signed the contract in 1986. As emphasized above, the contract states: "[W]e hereby agree to sell all the land except the farm building site." In addition, there is no dispute that the legal description is accurate. Therefore, when Vera and Sherill acquired different portions of the farm is irrelevant.

¶38   Further, all the parties testified that the object of the contract was still understood by all the parties. In fact, Sherill stated that the reserved building site was all fenced. Contrary to Vera's assertions, the alteration does not eliminate the reservation of the building site, but merely gives more detail to the farm lands sold. Further, John is not asserting that the alteration enabled him to buy the building site for the same price. The contract itself states: "John (Jack) also gets first chance to buy the Buildings and site." Therefore, the District Court was correct in holding John's final alteration immaterial and granting summary judgment in his favor.

## ¶39   3. Did the District Court err in holding that the mineral interests were transferred with the contract?

¶40   Having addressed the validity and explicit terms of the contract, we now turn to the main divisive issue in this case, whether the mineral interests were to be transferred with the farm. The contract at issue is silent as to minerals. The record indicates that this issue is at the core of the disagreement that arose in 1996.

¶41   Vera asserts that she and Sherill did not intend for the mineral interests to be transferred with the farm. This is supported by her testimony and Sherill's testimony at his deposition. Vera also argues that the use of the term "ASCS map" demonstrates that she and Sherill only intended farm lands to be transferred. Finally, Vera argues that the District Court misapplied the law when it found that their contract qualified as a land transfer subject to Title 70 because there is no language of conveyance in the document. She therefore asserts the court erred in applying the rule that such a transfer presumes a fee simple title. John asserts that the mineral interests are to be transferred with the farm because, unless specifically reserved, a contract presumes a fee simple transfer that includes all the attached interests in land. The District Court concluded that the mineral interests were transferred with the farm because the law requires explicit reservation of interests not transferred and Sherill and Vera failed to make any explicit reservations in the contract.

¶42   A land transfer presumes fee simple title unless a different intention is expressed in the transfer. See § 70-1-519, MCA; § 70-1-520, MCA; § 70-20-301, MCA. More specifically, minerals are presumed to pass with a land transfer unless expressly reserved. Voyta v. Clonts (1958), 134 Mont. 156, 162-63, 328 P.2d 655, 659

(conveyance of land without reservations includes all mineral rights). As mentioned, the contract at issue was silent as to minerals. Therefore, the mineral rights are presumed to pass with this contract.

¶43    Vera asserts she and Sherill did not intend the mineral rights to be included. However, as mentioned above, we do not consider extrinsic evidence of the parties' intentions unless the contract language is ambiguous. Danielson v. Danielson (1977), 172 Mont. 55, 58, 560 P.2d 893, 894-95. Otherwise, a court is bound by the clear language of a contract. Van Hook v. Jennings, 1999 MT 198, ¶ 11, 295 Mont. 409, ¶ 11, 983 P.2d 995, ¶ 11 .

¶44    There is no language in this contract that indicates an ambiguity regarding the minerals. To allow evidence of the intention of the parties on mineral interests because a land transfer is completely silent on that issue would wholly defeat the rule that reservations of such interests must be expressed in the transfer. Further, to allow such evidence would also defeat the rule that courts cannot insert new provisions in a contract when the language is unambiguous. Danielson, 172 Mont. at 58, 560 P.2d at 895 (holding that district court's restriction of life estate tenant to grazing uses incorrectly added term to parties' agreement to let life tenant use property "as he may deem fit" where life tenant was operating gravel pit).

¶45    In Hein v. Fox (1953), 126 Mont. 514, 520-21, 254 P.2d 1076, 1079-80, we noted that rewriting a contract when the writing is unambiguous would destroy the value of written instruments as evidence, would encourage negligence, and would open the door for the substitution of parol evidence for written evidence under a claim of mistake. We also stated that to permit the avoidance of a written contract because the terms of the contract now appear unreasonable would defeat the purpose of placing a contract into writing. Hein, 126 Mont. at 521, 254 P.2d at 1080. In Payne v. Buechler (1981), 192 Mont. 311, 318, 628 P.2d 646, 650, we held that even though parol evidence directly contradicted the plain and unambiguous language of the contract, it was inadmissible to show the property owner did not intend an exclusive listing with the broker. In this case, as the District Court properly held on summary judgment, we cannot consider Vera's and Sherill's contrary intent on this issue. This is especially appropriate in light of the fact that Sherill had reason to be knowledgeable regarding mineral interests because the record established he was director at large of the Northeast Montana Land and Mineral Owners Association for quite a few years.

¶46    Further, even though Vera asserts that the contract's mention of ASCS maps indicates only the surface farm lands were to be transferred, the language in the contract, as noted above, indicates John was buying "all the land." Therefore, the mention of ASCS maps to identify the boundaries does not create an ambiguity regarding mineral interests. To equate an explicit discussion of farm lands as equivalent to an express reservation of mineral interests would also defeat the rule requiring reservation of excluded interests.

¶47    Finally, Vera asserts that the presumption of fee simple title does not apply to this contract because there are no formally accepted words of conveyance in the contract. However, as the District Court correctly held, this presumption and others regarding property transfers, apply to contracts to sell land as well as deeds. See for example Voyta, 134 Mont. at 162-63, 328 P.2d at 659 (holding that minerals are presumed to pass with transfer in interpreting sale agreement rather than deed); Van Atta v. Schillinger (1981), 191 Mont. 472, 479, 625 P.2d 73, 77 (applying fee simple presumption to option agreement); see also § 28-2-907, MCA (transfer of property provisions in Title 70, Chapter 1, part 5 apply to contracts); § 70-1-502, MCA (contract rules apply to property transfers). Therefore, the District Court was correct in holding that the mineral interests are included in this contract.

¶48    **4. Did the District Court err in finding an anticipatory breach by Sherill rather than an anticipatory breach by John?**

¶49    Vera next argues that John breached the contract before Sherill because John refused to re-enroll the farm in the CRP and thereby extend it to end in 1997 as worded in the contract.  However, as discussed above, we agree with the District Court's finding that John was to be able to buy the farm in 1996 when the original CRP program ended.  Therefore, John's refusal to re-enroll the farm was not a breach of the contract.  Rather, as the District Court found based on substantial evidence, Sherill's attempt to re-enroll the farm in 1996, his refusal to sell the farm at that time as testified by John, and Vera's letter all demonstrate that he committed an anticipatory breach of the contract.  This excused John from performing his part of the contract, so John's subsequent failure to deliver payment was not a breach of the contract.  See Chamberlin v. Puckett Constr. (1996), 277 Mont. 198, 202, 921 P.2d 1237, 1239-40.

¶50        5. Did the District Court err in its determination of the damages awarded to John?

¶51    Vera raises one issue regarding the damages and John raises two issues on cross appeal.  First, Vera asserts that John is not entitled to specific performance and damages because he plead specific performance and damages in the alternative in his complaint, rather than asking for both types of damages.  John argues he is entitled to both.  The District Court concluded the error in the complaint was harmless because it held that the pre-trial order, approved by both parties as to form, superseded the pleadings and that John asked for damages in addition to specific performance in the pre-trial order.  After reviewing the pre-trial order, we agree with the District Court.  John's failure to request both types of damages in the complaint was cured by the pre-trial order, which supersedes the pleadings.  See Rule 16(e), M.R.Civ.P. (pre-trial order controls subsequent course of the action); Strong v. Williams (1969), 154 Mont. 65, 67-68, 460 P.2d 90, 91 (pre-trial order supersedes the complaint); Smith v. Johnson (1990), 245 Mont. 137, 143-44, 798 P.2d 106, 110 (plaintiff was entitled to specific performance and money damages for loss of use of property for one year).

¶52    John asserts that the District Court erred in calculating his damages for two reasons.  First, he argues that the District Court's determination that John would have lost money on the cattle and farming operations, even if he had been put in possession of the farm, was not supported by substantial evidence.  He bases this argument on the fact that he testified to the amount of money he could have made if he rented out the pasture and sold the hay from the farm, had he been put in possession, regardless of the money he lost in his cattle operation.

¶53    We agree with the District Court.  Damages are not awarded for speculative profits.  Riverview Homes II, Ltd. v. Canton, 2001 MT 309, ¶ 28, 307 Mont. 517, ¶ 28, 38 P.3d 848, ¶ 28.  This includes a determination of whether any profit would have been derived at all.  Riverview Homes, ¶ 28.

¶54    Here, the District Court awarded John $25,000 damages for the lost mineral royalties, but no damages for lost profits from the farming and cattle operations.  The court's finding that John would likely have lost money on the cattle and farming operations had he been in possession of the farm was based on the tax returns of John, Vera and Sherill submitted as evidence.  Vera and Sherill's four tax returns all show a net loss on the farming operations.  In addition, eleven of the sixteen tax returns submitted by John also show a farm loss.  Fifteen years of farm or cattle loss as shown on tax statements submitted by both parties is substantial evidence of loss.  Further, John's testimony regarding the average money he believed he could have made by renting out pasture and selling hay must be considered in the context of these past tax returns.  Therefore, the District Court's finding that John would not likely have received farm or cattle profits had he been in possession of the farm is supported by substantial evidence.

¶55    Next, John asserts the trial court erred in holding that he failed to mitigate his damages when he failed to tender the purchase price to Vera after the Order granting him summary judgment and specific performance.

John argues that he did not fail to mitigate his damages because he was waiting for the trial on damages to occur, in order to offset the purchase price.

¶56     While we do not agree with the District Court holding that John was required to tender purchase before the trial on damages, after reviewing the record, we note that this error is harmless because any additional damages John might have received are speculative.  When the trial court makes an error, but the record establishes that substantial justice has been done such that the error is harmless, this Court will not disturb the ruling of the lower court.  Rule 14, M.R.App.P.; Rule 61, M.R.Civ.P.; Thiel v. Johnson (1985), 219 Mont. 271, 277, 711 P.2d 829, 833 (awarding tort damages instead of contract damages harmless because amount would have been the same); Farmers State Bank v. Imperial Cattle Co. (1985), 218 Mont. 89, 96, 708 P.2d 223, 227 (slight variation in damages from proof at trial is harmless).  In this case, in addition to the fact that any additional damages are speculative, the District Court's holding is proper in light of the fact that the court did not offset its finding that John would likely have lost money on the farming operation against its award of mineral royalties.  Therefore, the court's holding that John failed to mitigate his damages is harmless error.

## V. CONCLUSION

¶57     The District Court correctly concluded the contract between John, Vera and Sherill was not materially altered and included the mineral interests.  Further, the court properly found the contract was to be performed in 1996 rather than 1997 and that Sherill breached the contract.  Finally, the court's determination of damages was based on substantial evidence.

¶58     Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA
M. GRAY
/S/ TERRY
N.
TRIEWEILER
/S/ JIM RICE
/S/
PATRICIA
COTTER